IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANE OTERO-BELL,

          Plaintiff,

vs.                                                         CIVIL NO. 10-623 RB/LFG

LOS ALAMOS NATIONAL
SECURITY, LLC,

          Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Diane Otero-Bell's ("Otero-Bell") Motion to Compel Defendant's Responses to Plaintiff's First Request for Production of Documents, filed January 31, 2011. [Doc. 43.] On February 17, 2011, Defendant Los Alamos National Security, LLC ("LANS") filed its response. [Doc. 45.] Otero-Bell did not file a reply, and the deadline for doing so has passed. Thus, this matter is fully briefed and ready for resolution. Moreover, to the extent LANS makes factual assertions that certain discovery was provided, or that Otero-Bell narrowed requests, these assertions are unchallenged and accepted as true. Thus, after careful consideration of the pertinent law, pleadings, and exhibits, the Court grants the motion in part and denies it in part as explained below. The request for attorney's fees and costs is denied.

### Background

Otero-Bell sets forth employment-related claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Mexico Human Rights Act. [Doc. 26, JSR.] Specifically, she alleges sex and national origin discrimination, common law retaliation, breach of contract, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress,

constructive discharge, and prima facie tort. [Doc. 26.] Otero-Bell was formerly employed with LANS. [Doc. 43, ¶ 1.]

LANS denies that it committed any unlawful practices and further denies that Otero-Bell is entitled to damages or any other relief. [Doc. 26.]

## Motion to Compel

On November 23, 2010, Otero-Bell served document requests on LANS requesting salary and employment level history of "displaced white male managers [RFP 2], communications relating to her resignation from employment and statements relating to the same [RFP 5], emails concerning herself and principal decision-makers and witnesses regarding claimed adverse employment actions [RFP, 7, 19], and external Materials Control and Accountability (MC&A) review data [RFP 20]." These are the document requests in dispute.[1] [Doc. 43, p. 1.]

### A.     Request for Production No. 2

Otero-Bell requests copies of all personnel action forms, merit increase notifications, and salary action requests for a five-year period (2005-Dec. 2010) for 25 individuals. LANS objects on grounds that the request is over broad, unduly burdensome, seeks information not relevant to the subject matter of the lawsuit, and is subject to concerns of privacy/confidentiality. LANS notes that after telephone communications with Otero-Bell's attorney, the request was narrowed to "either the Personnel Action Forms ["PAF"] or Salary Action Requests ["SAR"] for each of the 25 individuals for the same five-year period. [Doc. 45, Ex. A, No. 2.] LANS, however, maintained its objections

---

[1] While Otero-Bell stated she attached copies of the relevant document requests to her motion, they were not attached. [Doc. 43.] LANS, however, attached them to the response. *See* D.N.M. LR-Civ 37.1 (party seeking relief in motion to compel must attach copies of discovery request and response).

2

but agreed to produce non-privileged, responsive documents if Otero-Bell "will narrow the request and explain the relevance of the requested information." [Id.]

In her compel motion, Otero-Bell argues generally that broad-based objections are not permissible and that relevancy is interpreted broadly, with respect to the requested information. Regarding RFP No. 2, Otero-Bell claims that LANS "has offered to produce either the PAF or the Salary Action Request data for these individuals." [Doc. 43, ¶ 9.] Otero-Bell states she opted to receive the PAF forms unless the SAR data was electronic and easier to produce. She has yet to receive the requested information which she claims is "clearly relevant" to her claims of discrimination, retaliation, and breach of contract.

In its response, LANS asserts that Otero-Bell misunderstood LANS' objections or its purported agreement to produce the requested documents. LANS clarifies that it did not agree to produce either of the categories of information for 25 individuals over a 5-year period and instead maintained its original objections. [Doc. 45, p. 6.] LANS's responses to document requests are consistent with its representations that it maintained its objections without agreeing to produce the documents described by Otero-Bell. [Doc. 45, Ex A.]

LANS further asserts that Otero-Bell must have some evidentiary basis for asserting that employees are similarly-situated to her before she can obtain sensitive employment information about the 25 individuals. In other words, Otero-Bell's conclusory claim that the requested information is relevant to her claims is insufficient because she failed to show that all 25 people on her list are similarly situated in the sense that Otero-Bell and the individuals dealt with the same supervisor and were subject to the same performance evaluation standards. [Doc. 45, pp. 6-7.] LANS also observes that some of the identified individuals are clearly not similarly situated as they were never in Otero-Bell's "directorate" or under the supervision of her director, Michael Lansing. *See,*

*e.g.,* McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006) ("[s]imilarly situated employees . . . deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline").

In determining what information or documents must be produced in response to RFP No. 2, the Court finds persuasive the discussion of proportionality by The Sedona Conference Working Groups Abstract on Guidance for the Judiciary. That report highlights the key consideration in determining the appropriate balance to strike between one party's request for information and the opposing party's objection to production.

> There is nearly universal agreement that the cost of litigation in state and federal courts has become so expensive that litigants are being priced out of the process, and that the chief culprit is the failure of courts and lawyers to control the costs of discovery. American College of Trial Lawyers and Institute for the Advancement of the American Legal System, Final Report on the Joint Project of the American College of Trial Lawyers Task Force on Discovery and the Institute for Advancement of the American Legal System, p. 2 (March 11, 2009).
>
> The problem is not new, but is decades-old. Mancia v. Mayflower Textile Servs., 253 F.R.D. 354, 360 (D. Md. 2008) (noting legislative history of the Civil Justice Reform Act of 1990 included reports of studies done in 1980 which found that discovery abuse was widespread).
>
> The irony is that the solution to this problem is, and has been for years, right at our fingertips, and is found in the cost-benefit proportionality factors of Fed. R. Civ. P. §§ 26(b)(2)(C) and 26(g)(1)(B)(iii).

Rule 26(b)(2)(C) provides that on motion or on its own, the Court shall limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines:

> (i) The discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

>(ii) the party seeking discovery has had ample opportunity to obtain information by discovery in the action; or
>
>(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the action, and the importance of the discovery in resolving the issues.

The intent of the Rule is simple. The Court must balance one party's right to obtain discovery with the burdens imposed on the other party, and in striking this balance, must look at a number of factors. For example, the court must consider the requester's need for the information, the relevance of the requested information to the litigation, the burden of producing the sought-after material, and the harm or difficulty which would be caused to a party seeking to protect the information. A court may deny the request altogether, limit the conditions, time, place or topics of discovery, or limit the manner in which the material will be disclosed. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000); *see also* Burka v. U.S. Dep't of HHS, 87 F.3d 508, 517 (D.C. Cir. 1996).

Clearly, a party should obtain information that is relevant to the claims and defenses, and is necessary for the successful prosecution or defense of a claim. But in obtaining the information, it is important that the requesting party not ask for too much or for information that is not relevant to the claims and defenses. Thus, the Court must carefully scrutinize the requested information and its usefulness in the case, and balance the party's need to obtain the information as opposed to the harm that would befall the opposing party. In other words, proportionality should be the Court's guiding light.

In addition, the Court observes that the prior scope of relevancy under Rule 26 had been described as "relative to the subject matter involved in the pending action." However, in 2000, Rule 26 was revised to be far more restrictive. Its scope is now limited to matters "relevant to the claims or defenses of any party." *See* United Oil Co. v. Parts Assocs., Inc., 227 F.R.D. 404, 409-410 (D. Md. 2005) (discussing effects of the 2000 amendment). Moreover, the Advisory Committee commentary to Rule 26 indicates that the focus of relevant discovery is the actual claims and defenses. Rule 26 may not be used to develop new claims, theories or defenses or be used for improper purposes.

Otero-Bell's RFP No. 2 seeks too much information. In reviewing her Complaint, Otero-Bell contends she was treated differently than similarly situated white males. She alleges that as a department head and project manager, her requests for additional resources and staffing for her department went unheeded while LANS provided similarly situated white males with the resources needed to perform their function.

Otero-Bell also asserts that she was improperly blamed in the NNSA Defense Nuclear Security special review team's investigative report, which was severely critical of Otero-Bell's MC&A program. The NNSA report also criticized the fact that the managment and inventory of nuclear materials, an exceedingly important responsibility, were being performed by a part-time worker, Otero-Bell. The importance of the task mandated full-time attention. Otero-Bell cited the deficiencies in the report and alleges she sought to get LANS to address these very problems over the years. She contends she was unfairly berated and blamed in large part for the situation.

Otero-Bell fails to demonstrate that the 25 individuals listed in RFP No. 2 are similarly situated to her and that their personnel files are relevant to her claims. Indeed, some of the male employees identified by Otero-Bell worked in different departments or directorates. Others were

6

not supervised by Otero-Bell's supervisor. Thus, it is unclear why the personnel files of all those individuals should be produced. Applying an appropriate balance and considering the "proportionality" called for in Rule 26, only the files of similarly situated employees should be provided.

For example, the personnel file of the male employee Otero-Bell replaced in the MC&A program is relevant. So, too, the personnel file of the male who replaced Otero-Bell is relevant. Similarly, the personnel file of the individual whom she replaced in the security position and the file of the male who replaced her should be produced. These males performed the same functions, had the same responsibilities, and were likely supervised by the same individuals. Thus, information in their personnel files concerning salary, responsibilities, discipline, salary requests, etc. are relevant to Otero-Bell's claims and must be produced in accordance with the protective order. [*See* Doc. 25.]

Otero-Bell fails to show, however, that the requested personnel information or files of the other 23 individuals are relevant to the claims she asserted or why LANS's objection based on privacy concerns should be overruled. Indeed, Otero-Bell provides no justification why the highly private personnel files of 23 employees, who do not appear to be similarly situated, should be produced in view of the general policy against the disclosure of confidential, personnel information. These other employees, who are not parties to this litigation, have privacy rights. *See* Regan-Touhy v. Walgreen Co., 526 F.3d 641, 648 (10th Cir. 2008) (personnel files often contain sensitive personnel information).

> [T]here is a strong public policy against the discovery of personnel files. Consequently, the discovery of such files is permissible only if (1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable.

Coker v. Duke & Co., 177 F.R.D. 682, 685 (M.D. Ala. 1998) (internal quotation marks and citations omitted).

It was incumbent on Otero-Bell to show that these 23 other employees are similarly situated, and that, therefore, their personnel information is "clearly relevant" and that the information sought is "compelling" with respect to the claims before the Court. This, she did not do. The fact these 23 individuals may be "displaced white male managers" is insufficient to allow a *carte blanche* examination of their personnel information.

To the extent that the Court has now ordered production of some personnel files,[2] LANS should produce them to Otero-Bell's counsel within ten (10) days after entry of this Order.

**B.     Request for Production No. 5**

In this Request, Otero-Bell seeks copies of documents "related to Defendants' Exhibits 15-20 listed in the Joint Status Report [JSR]." LANS objects to RFP No. 5 on grounds that the request is overly broad, unduly burdensome, and compound. LANS agrees to produce non-privileged, responsive documents if Otero-Bell narrows the request and identified which of the documents/exhibits she does not already have in her possession.

The Court overrules LANS's objections. The JSR requires the parties to list documents they will rely on at trial in the prosecution of the claims or defenses. In LANS's portion of the JSR it identifies these documents (Exhs. 15-20) in its list of exhibits to be used at trial. LANS cannot now refuse to produce that which it identified as documents it intended to rely on at trial. Thus, LANS

---

[2]The Laboratory may properly redact certain information, including social security numbers, medical records, health information, home addresses and telephone numbers.

is instructed to produce the responsive documents to Otero-Bell's counsel within ten (10) days after entry of this Order.[3]

### C.  Request for Production No. 7

In this Request, Otero-Bell originally requested "copies of performance appraisals and upward performance appraisals for 2006 through 2009 for Diane Otero-Bell, Alexander Paul Sowa, Michael Lansing, Joel Williams, J. Noon, Lois McFarland [and] Randy Fraser." In its supplemental responses [Doc. 45, Ex. B], LANS produced requested information for Otero-Bell. But, LANS objected to producing information concerning other employees. Following its objection, Otero-Bell narrowed the request to a two-year period (2009-2010) for the "individuals listed." [Doc. 45, Ex. C.] Then, in the motion to compel, Otero-Bell states that she has narrowed the request to 2009 and 2010 "only for" the records of Fraser, Williams and Lansing. [Doc. 43, ¶ 11.] However, Otero-Bell again fails to show how the performance appraisals and upward performance appraisals for all three of these individuals are relevant to the claims and defenses at issue in this case.

The Court determines that performance appraisals of both her predecessor and successor in the materials program and her predecessor and successor in the security program are relevant and should be produced. As Otero-Bell claims that she was unfairly appraised by the defense materials team, it is appropriate to compare her performance appraisals to those individuals who served in the same position immediately before and after her.

LANS must produce the information to Otero-Bell's attorney within ten (10) days after entry of this Order.

---

[3]To the extent Otero-Bell already advised LANS that she has some of these documents, LANS may decline to reproduce them. However, if she has not limited her request, it is incumbent on LANS to produce them within ten days.

### D.     Request for Production Nos. 9 & 10

In paragraph 2 of Otero-Bell's motion to compel, she does not identify these RFPs as being in dispute. [Doc. 43, ¶ 2.] However, she briefly mentions these requests at paragraph 12 of her motion. [Doc. 43, ¶ 12.] She claims that LANS produced at least one document that is not legible but that it agreed to produce another copy to rectify the problem. In LANS's response states it will supplement its responses accordingly after Otero-Bell identifies which documents are not legible. This request does not appear to be in dispute, and the Court does not address it further.

### E.     Request for Production No. 19

Otero-Bell originally requested copies of "any and all e-mails, including email attachments, between Plaintiff and Paul Sowa, Michael Lansing, Joel Williams, Darryl Overbay, John Noon, Jack Kileen, Randy Fraser, Christie Archuleta, or Lois McFarland" for the years 2006 through 2010. LANS objected on grounds that the request is overly broad, unduly burdensome, compound, and not limited in scope or topic. The Court agrees. LANS also objected based on concerns of privacy/confidentiality and relevancy.

Otero-Bell then narrowed the request to a period of January-September 2009 and eliminated Sowa, Noon, and Kileen. Thus, Otero-Bell's revised request seeks information for e-mail communications between Otero-Bell and Lansing, Williams, Overbay, Fraser, Archuleta, and McFarland. Otero-Bell did not attempt to limit the scope of emails by subject, *e.g.,* emails relating to requests for increased funding or emails relating to decisions to remove Otero-Bell from the MC&A position when she turned down LANS's request that she become full-time project manager.

Otero-Bell's failure to limit the scope of her request to a relevant subject matter is fatal. This is an example of overreaching discovery criticized by the Sedona Conference.

The Court determines the request for any and all e-mails between Otero-Bell and the remaining six individuals is overly broad. Moreover, Otero-Bell made no facial showing of relevance as to the revised request for information. Therefore, the Court sustains LANS's objections, with the result that LANS need not produce the requested information.

F.     **Request for Production No. 20**

Otero-Bell seeks "copies of any Internal or External reviews and assessments of the LANS MC&A Program" for the years 2006 through 2009, including, but not limited to, those performed by LANS Board of Governors, DOE, NNSA, and DOD.

LANS objects to the request contending it is overly broad, unduly burdensome, compound, and seeks highly sensitive information irrelevant to the lawsuit. Otero-Bell then narrowed the request to cover 3-4 external MC&A reviews discussed in depositions of Overbay, Williams , and Fraser. [Doc. 45, Ex. C.]   LANS states there were more than three or four documents mentioned in the deposition transcripts and that some of those documents contain classified information. In addition, LANS argues that is not clear which documents Otero-Bell actually seeks. Thus, the request remains overly broad and unduly burdensome. However, LANS agrees to produce non-classified, non-privileged, responsive documents provided Otero-Bell identifies the "3-4 external MC&A reviews" that she seeks with "reasonable particularity." [Doc. 45, p. 13.]

The Court sustains LANS' objection in part. What is significant in this case is the DOE's assessments of the MC&A program before, during, and after Otero-Bell's work as a project manager, including the nuclear team's assessment and report that was highly critical of the MC&A program. Indeed, it was that report that resulted in the determination by LANS that a full-time person was necessary and proposal that Otero-Bell take control of that program on a full-time basis.

11

Because LANS agreed to produce non-classified, non-privileged documents if Otero-Bell specifies the three or four documents she seeks, the Court requires Otero-Bell's attorney to meet with defense counsel within ten (10) days and be more specific as to the requested documents. Thereafter, to the extent that those documents are not classified and not privileged, LANS must produce them to Otero-Bell's counsel within ten days after clarification.

SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge